This is a claim by a bank under a Contract of Guarantee (Emergency Livestock Loan) issued pursuant to Pub.L. No. 93-357, the Emergency Livestock Credit Act of 1974 ("Act”), 88 Stat. 391, 7 U.S.C. note preceding § 1961. The *943 Farmers Home Administration (FmHA) refused to honor the Guarantee after the default of the borrower. The sole issue for decision under defendant’s motion for summary judgment is a legal one: whether or not a lender under a Contract of Guarantee (Emergency Livestock Loan) has an absolute duty to obtain and maintain security adequate to cover the full amount of the loan, or in other words, warranties that the security is adequate. If not, there clearly remain material issues of fact in dispute. Defendant also tries to show plaintiff admits negligence, but we do not so read either the petition or plaintiffs response to the motion, and we consider that issue no further.
For purposes of the motion, the facts are not in issue or must be taken in the light most favorable to plaintiff. Plaintiff is engaged in banking business in Alexandria, South Dakota, an agricultural community. Plaintiff made a loan to a Mr. Gary Hoffman on October 24, 1972. Mr. Hoffman used the loan to purchase cows. Various other loans were subsequently made by plaintiff to Mr. Hoffman and Mr. Hoffman periodically made deposits of receipts from sales of cattle and grain and from labor performed by Mr. Hoffman. The local Register of Deeds office revealed no indebtedness of which plaintiff was not aware.
Because of poor crops due to a drought, plaintiff determined that it could not advance further funds to Mr. Hoffman without a loan guarantee from the FmHA. On June 6, 1975, and on April 7, 1976, applications were made for such a loan guarantee listing 345 and 260 head of cattle, respectively, as belonging to Mr. Hoffman. On April 7, 1976, the FmHA issued a "Contract of Guarantee” under the Act with a credit ceiling of $115,000.
Both before and after the issuance of the guarantee, plaintiff counted what it believed to be Mr. Hoffman’s cattle, including one instance when an employee of the FmHA participated. Since the area in question is not a registered brands area, no check at a registry was possible. Cattle and farm machinery apparently were the only security for the advances.
In the spring of 1977, plaintiff required Mr. Hoffman to sell some farm machinery to reduce his indebtedness. An individual came forward saying that the cattle on Mr. Hoffman’s land were not wholly owned by Mr. Hoffman. *944 After unsuccessfully attempting to locate Mr. Hoffman, plaintiff took the cattle from Mr. Hoffman’s land and offered them for sale. After various owners claimed their cattle, the remainder were sold and the proceeds were applied against Mr. Hoffman’s indebtedness. Plaintiffs loss on the loan was $79,583.09 in principal, interest, and expenses of the sale. Mr. Hoffman has pled guilty in U. S. District Court to making false statements to influence a bank. Plaintiff claimed on the Contract of Guarantee for 90 percent of the loss. The FmHA denied the claim and plaintiff brought this action.
Defendant has moved for summary judgment on the ground that the Contract of Guarantee is unenforceable against defendant where plaintiff has failed to obtain and maintain security adequate to cover the amount of the indebtedness, whether or not culpably.
In support of its position, defendant relies on two provisions of the Act and two regulations promulgated thereunder. Section 4 of the Act provides:
Section 4. [Adequate Security] Loans guaranteed under this Act shall be secured by security adequate to protect the Government’s interests, as determined by the Secretary: Provided, That the Secretary may accept collateral which has depreciated in value owing to temporary economic conditions and which, in the opinion of the lender, together with confidence in the repayment ability of the borrower, is adequate security for the loan.
Under § 10 of the Act, the Secretary is authorized to promulgate regulations. Two regulations thereunder are relevant to this dispute. 7 C.F.R. § 1845.13(c) provides, in pertinent part:
The Contract of Guarantee shall be unenforceable by the lender to the extent that any loss is occasioned by * * * negligent servicing or failure to obtain the required security. This language is also contained in the Contract of Guarantee.
7 C.F.R. § 1845.15 provides, in pertinent part:
The lender is responsible for seeing that proper and adequate security is obtained and maintained in existence and of record to protect the interests of the lender and the Farmers Home Administration.
*945 Upon review of the statute, the regulations, and the terms of the Contract of Guarantee, we find that defendant’s position is untenable. The language is susceptible to the interpretation that the required security is to be obtained and maintained according to prudent and reasonable banking practice, and we do so construe it. It is not fairly to be construed as requiring the lender to warranty defendant that the security is adequate.
The purpose of the Act was to encourage financial institutions by guarantees to extend credit to farmers engaged in livestock production, who had suffered from recent market conditions and could not obtain purely private credit. Legislative history, [1974] U.S. Code Cong. & Ad. News 3929, 3930. That purpose would be poorly served if we were to rule in favor of defendant’s position. If adequacy of the security is tested only by the ultimate result, the loan guarantee is inoperative. Prior to claiming on the Contract of Guarantee, the lender must apply the security against the indebtedness. If the value of. the security is sufficient to cover the outstanding indebtedness, clearly no claim may be made on the guarantee, no loss having been suffered. On the other hand, if the lender has, as it turns out, failed to "obtain and maintain” security adequate to cover the loan, despite having done all a prudent and reasonable banker could be expected to do to assure having such security, the Contract of Guarantee as construed by defendant provides no incentive for lending institutions to provide credit. It is highly unlikely that Congress and the Secretary of Agriculture could have intended the result urged by defendant. A 5 percent loss rate was anticipated. Legislative history, supra, at 3933. "In the certification process under Section 3(a), the Committee does not intend that lenders look beyond their own good faith and the extent of their own information and belief when certifying factual conditions applicable to borrowers. The Committee of course intends that lenders be held by the Secretary to a reasonable standard of faith and knowledge.” Id. at 3932. The matter of adequate security is dealt with in Section 4, not 3(a), but the stated lenient standard under the one would jar with the Draconian standard proposed by defendant under the other.
*946 In its reply brief, the government shifts its argument slightly. It is urged that failure to obtain and maintain security adequate to cover the full value of the loan is negligence per se in the servicing of the loan. No support for such a rule is asserted and the argument is merely another route to the result rejected above.
Failure to obtain and maintain adequate security is in the nature of an affirmative defense and the defendant must show that plaintiff was in some way culpable in allowing itself to be defrauded as to ownership of the security offered. This is not an appropriate determination for summary judgment.
it is therefore ordered that defendant’s motion for summary judgment is denied and the cause is remanded to the trial division for further proceedings.